# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **OLE K. NILSSEN and GEO FOUNDATION LTD.,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   No. 05 C 2933<br>) |
| **MAGNETEK, INC.,** | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Ole K. Nilssen's ("Nilssen") and Petitioner GEO Foundation, LTD.'s ("GEO") (collectively referred to as "Petitioners") petition for confirmation of an arbitration award. This matter is also before the court on Respondent MagneTek, Inc.'s ("MagneTek") petition to vacate an arbitration award. For the reasons stated below, we grant the petition to confirm the arbitration award and deny the petition to vacate the arbitration award.

## BACKGROUND

On April 13, 1998, Nilssen allegedly filed a patent infringement action against

MagneTek ("Infringement Action") in which Nilssen accused MagneTek of infringing Nilssen's patents including patent number 5,432,409 ("'409 Patent"). The Infringement Action was allegedly dismissed pursuant to settlement by Nilssen and as part of the settlement agreement ("Settlement Agreement") the parties agreed to arbitrate the dispute. After the dismissal of the Infringement Action, the parties engaged in arbitration proceedings ("Arbitration Proceedings") and the arbitrator ("Arbitrator") awarded Nilssen $23,352,439.63 ("Arbitration Award"). Prior to the entry of the Arbitration Award, MagneTek had allegedly already paid GEO $1,375,000. Petitioners contend that MagneTek refuses to pay the remaining amount owed under the Arbitration Award. Petitioners brought the instant action and filed a petition pursuant to 9 U.S.C. § 9 for "an order confirming the award. . . ." 9 U.S.C. § 9. MagneTek subsequently filed a petition to vacate the Arbitration Award. This case was reassigned to the undersigned judge on March 6, 2008.

## LEGAL STANDARD

Pursuant to 9 U.S.C. § 9, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an

order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected. . . ." 9 U.S.C. § 9.  The bases for "overturning an arbitration award are extremely limited." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008).  A court may vacate an arbitrator's award based upon an arbitrator's "'manifest disregard of the law,'" which has been held to cover "only two scenarios: (1) an order requiring the parties to violate the law; or (2) an order that does not adhere to the legal principles specified by the contract." *Id.* (quoting in part *George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 581 (7th Cir. 2001)).  Factual errors or legal errors by the arbitrator "no matter how gross, [are] insufficient to support overturning an arbitration award." *Id.*

**DISCUSSION**

I.  Jurisdiction to Confirm Arbitration Award

MagneTek argues that this court does not have subject matter jurisdiction to confirm the Arbitration Award.  MagneTek points to certain non-controlling precedent, contending that certain federal district courts in other circuits have refused to confirm an arbitration award if the arbitration agreement in question did not have an explicit provision providing for court confirmation.  (Mem. Pet. Vac. 13).  The

Seventh Circuit, however, has held that a court has jurisdiction to confirm an arbitration award if it can be inferred from the agreement in question that the parties contemplated court confirmation. *See Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 390 (7th Cir. 1981)(indicating that parties can "implicitly agree[] that federal court intervention may be sought to compel compliance"). In the instant action, the agreed submission by the parties to the American Arbitration Association ("Submission Agreement") stated the following: "We agree that, if arbitration is selected, we will abide by and perform any award rendered hereunder and that a judgment may be entered on the award." (Ans. Pet. Vac. Ex. C). The reference in the Submission Agreement to a judgment that can be entered on the award, clearly indicates that the parties contemplated a court confirmation of an arbitration award. In addition, Petitioners point out that the parties agreed to have the arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which contemplates court confirmation. (Ans. Pet. Vac. Ex. C). The Seventh Circuit has held that such an agreement to proceed under the AAA rules is sufficient to confer jurisdiction on the federal courts to confirm an arbitration award. *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1273 (7th Cir. 1976).

Although the Settlement Agreement did not specifically indicate that the

parties contemplate a court confirmation of an arbitration award, the Submission Agreement is a clear indication by the parties that they contemplated such an arrangement.  *See Daihatsu Motor Co., Ltd. v. Terrain Vehicles, Inc.*, 13 F.3d 196, 201-03 (7th Cir. 1993)(considering extrinsic evidence of parties intent to consent to court confirmation).  MagneTek also agues that the absence of consent to confirmation language in the Settlement Agreement is important since it never agreed that the arbitration award would be final.  (Ans. Pet. Conf. 3).  However, as Petitioners correctly point out, after the Arbitration Proceedings, MagneTek issued a press release ("Press Release"), which MagneTek also filed with the Securities and Exchange Commission.  The Press Release specifically stated that "both parties agreed to submit limited issues in dispute to final and binding arbitration."  (Reply Pet. Conf. Ex. K, L).  MagneTek also stated in the Press Release in regard to the Arbitration Award that, "[w]hile it was unexpected, the decision is final, binding and not subject to appeal or explanation by the arbitrator."  (Mem. Pet. Conf. Ex. K, L).  Therefore, we conclude that we have jurisdiction in this action to confirm the Arbitration Award.

II.  Newly Discovered Evidence

      MagneTek argues that this court cannot confirm the Arbitration Award

because the award was obtained by fraud Nilssen allegedly perpetrated in the arbitration proceedings and MagneTek has recently uncovered evidence of the fraud. MagneTek claims that it entered into the Settlement Agreement that provided for arbitration, but that it did so without realizing that Nilssen had allegedly concealed facts from the United States Patent and Trademark Office concerning "prior electronic ballast art."  (Mem. Pet. Vac. 2).  MagneTek claims that had it known of these concealed facts, it would not have entered into the Settlement Agreement. According to MagneTek, it has now learned that "Nilssen has engaged in a consistent pattern of fraudulent non-disclosure in dealing with the Patent and Trademark Office and has been repeatedly admonished for his conduct."  (Mem. Pet. Vac. 5). MagneTek argues that this court should not enforce the Arbitration Award and should vacate the award since it was procured by fraud.  A court can vacate an arbitration award if the award was "'procured by corruption, fraud, or undue means,'" if it is shown that "the corruption, fraud, or undue means was (1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence."  *Gingiss Intern., Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995)(quoting in part 9 U.S.C. § 10(a)(1)).

    MagneTek contends that "at the time of the arbitration MagneTek was not

aware of other significant non-disclosed prior art, which was known to Nilssen and which was material to the claims of the [']409 Patent." (Mem. Pet. Vac. 4). MagneTek further contends that "[t]he newly discovered prior art includes three Japanese patents for materially similar electronic ballast devices." (Mem. Pet. Vac. 4). MagneTek also contends that the alleged newly discovered evidence of fraud related to "two actions by the P[atent and Trademark Office] rejecting numerous claims by Nilssen on patent applications 07281,275 and 107,795." (Mem. Pet. Vac. 5). In support of its contentions, MagneTek presented the court with the declaration of Mark J. Patterson ("Patterson"). Patterson indicates in his declaration that after the issuance of the Arbitration Award, he took part in an investigation that revealed evidence of fraud by Nilssen, that was unknown by Patterson and MagneTek. (Patt. Decl. Par. 3).

    A. '474 Patent

Patterson contends that Nilssen failed to disclose Japanese patent publication JP55117474 ("'474 Patent") when Nilssen applied for the '409 Patent. (Patt. Decl. 2). However, Nilssen contends that Patterson and MagneTek were well aware of the '474 Patent at the time of the Arbitration Proceedings. Nilssen contends that MagneTek knew about the '474 Patent for over ten years and MagneTek in fact

presented evidence of the '474 Patent and the related application by Nilssen at the Arbitration Proceedings. (Ans. Pet. Vac. Ex. A, G). MagneTek also had a separate exhibit that it presented at the Arbitration Proceedings that focused on the importance of the '474 Patent. (Ans. Pet. Vac. Ex. A). MagneTek in its reply brief for its petition to vacate, does not deny any of the above facts concerning the Arbitration Proceedings. MagneTek instead responds, stating that it never asserted that it was not aware of the '474 Patent earlier. MagneTek admits that it knew of the '474 Patent, and it only argues in its petition to vacate the award that it recently discovered the significance of the '474 Patent. MagneTek states that it did know of the '474 Patent a long time ago, but that did not know that Nilssen knew of the '474 Patent when he applied for the '409 Patent and MagneTek did not become "aware of the relevance of this Japanese publication until it's [sic] counsel became involved in examining the history of the 11 patents asserted against Patterson's other client - Universal." (Reply Pet. Vac. 3).

    We first note that MagneTek in its petition to vacate did not admit that it was aware of the '474 Patent prior to the investigation by Patterson. MagneTek, for example refers to the Japanese patents including the '474 Patent as "newly discovered prior art," and as prior art that "[a]t the time [of the Arbitration Proceedings] neither MagneTek nor the arbitrator were aware of. . . ." (Mem. Pet.

Vac. 4).  It is only in MagneTek's reply brief that MagneTek qualifies its position by contending that MagneTek and the arbitrator were aware of the '474 Patent, just not the full significance of the patent.

 Secondly, MagneTek fails to offer a sufficient explanation for allegedly not discovering the relevance of the '474 Patent until the recent investigation by Patterson.  The record shows that MagneTek utilized evidence concerning the '474 Patent to support its case in the arbitration proceedings.  MagneTek has not presented a sufficient reason why it would not have researched matters concerning the '474 Patent that it now claims to have discovered.  MagneTek argues that the significance of the '474 Patent only became apparent after it was tied to a "systematic" series of fraudulent conduct by Nilssen.  (Reply Pet. Vac. 3-4).  However, the evidence concerning the alleged concealment of the '474 Patent in and of itself should have been of sufficient importance to render it relevant at the time of the Arbitration Proceedings.  The fact that it was also a part of an alleged series of fraudulent concealment offers only additional justification for its presentment.  MagneTek clearly should have made further efforts at the time of the Arbitration Proceedings to conduct its investigation.  As indicated above, the role of a court reviewing an arbitrator's award is extremely limited and a court can only overturn an award based upon evidence "not discoverable upon the exercise of due diligence prior to the

arbitration." *Gingiss Intern., Inc.*, 58 F.3d at 333.  MagneTek has not shown that the evidence concerning the '474 Patent was evidence that it could not have reasonably discovered prior to the issuance of the Arbitration Award.

The Seventh Circuit has also recently re-affirmed the principle that a court's role in reviewing an arbitration award is extremely limited.  *Halim*, 516 F.3d at 563.  The Seventh Circuit gave a reminder that when parties agree to arbitrate disputes they agree to allow the arbitrator to decide the dispute and provide "a cost-effective and efficient resolution of their dispute."  *Id.*  The Court indicated that unwarranted interference with an arbitration award by the courts after the entry of such an award would nullify the efficiency goal behind the arbitration proceedings.  *Id.* (citing *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 289 (3d Cir. 2004) for the proposition that "limited judicial review of arbitrator's decisions is necessary to uphold the federal policy in favor of arbitration and to avoid long and expensive litigation proceedings").  Thus, MagneTek, having failed to prevail at the Arbitration Proceedings must come forward with a sufficient basis to warrant the vacation of the Arbitration Award.  MagneTek cannot now, in retrospect, present evidence of an investigation such as the investigation by Patterson to dig up material in an attempt to undo the Arbitration Award.  The time for MagneTek to raise its concerns about Nilssen's alleged misconduct was at the Arbitration

Proceedings. MagneTek cannot use such an investigation as a fallback position to obtain a second bite at the apple and have this court nullify the outcome of a fully arbitrated dispute, short of newly discovered evidence relating to the alleged fraud that could not have been discovered at the time of the Arbitration Proceedings with due diligence. Thus, under the facts presented in this case, MagneTek has not shown that the evidence concerning the '474 Patent is sufficient to support a vacation of the Arbitration Award.

B.  '689 and '473 Patents

Patterson also states in his declaration that his investigation uncovered information concerning Japanese Patents JP57135689 ("'689 Patent") and JP59153473 ("'473 Patent"). (Patt. Decl. 3-4). However, as Petitioners point out, both of these patents were cited by the Patent and Trademark Office in Nilssen's patent application 658,423 ("'423 Application") that eventually became the '409 patent. MagneTek does not deny that it has possessed the '423 Application for over ten years. MagneTek again argues only that it never realized that the '689 Patent and the '473 Patent were "relevant" until Patterson conducted his investigation. (Reply Pet. Vac. 6). MagneTek contends that ten years ago, "it had no reason to explore references in file histories for patents which it did not dispute." (Reply Pet. Vac. 6).

However, at the time of the Arbitration Proceedings it was incumbent upon MagneTek to conduct research concerning all the information provided. MagneTek could and should have presented the claims of alleged fraud by Nilssen to the arbitrator in the Arbitration Proceedings. MagneTek cannot now utilize this action as a means to undo its lack of diligence during the Arbitration Proceedings. *Halim*, 516 F.3d at 563 (citing *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A. W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) for the proposition that there is a "need for arbitration to be efficient and cost-effective resolution of disputes"). MagneTek has failed to provide a sufficient justification for its failure to raise its arguments concerning the '689 Patent and the '473 Patent at the Arbitration Proceedings. Thus, MagneTek has not shown that the evidence concerning the '689 Patent and the '473 Patent is sufficient to support a vacation of the Arbitration Award.

### C.  '795 and '275 Applications

MagneTek also contends that part of the "newly discovered" evidence concerning Nilssen includes application numbers 07/107,795 ("'795 Application") and 07/281,275 ("'275 Application") that were filed by Nilssen. (Patt. Decl. 5). MagneTek claims that it was only able to discover information such as information

relating to the '795 Application and '275 Application, "[a]s a result of the painstaking legal detective work conducted by . . . Patterson and his technical staff. . . ." (Mem. Pet. Vac. 5).  However, such an assertion is called into question by the evidence pointed to by Nilssen that shows that MagneTek marked the '795 Application as an exhibit in the Arbitration Proceedings.  (Ans. Pet Vac. 7).  Nilssen also points to evidence showing that MagneTek cross-examined Nilssen at the arbitration proceedings extensively concerning the '795 Application.  (Ans. Pet. Vac. 7).  In regard to the '275 Application, Petitioners point out that the application has been publically available since December 1995.  Thus, MagneTek's claims that it uncovered the '795 Application and '275 Application only after "painstaking legal detective work" is not supported by the record.  (Mem. Pet. Vac. 5).  Thus, MagneTek has not shown that the evidence concerning the '795 Application and '275 Application is sufficient to support a vacation of the Arbitration Award.

### D.  Evidence as a Whole

Although MagneTek contends that it has discovered new evidence that supports a vacation of the arbitration award, MagneTek has failed to point to such new evidence.  MagneTek fails to point to sufficient evidence in its petition to vacate to warrant a vacation of the Arbitration Award.  Even if MagneTek was truly

unaware of certain specific facts that its motion to vacate is based upon, MagneTek could have and should have been able to ascertain such facts at the time of the Arbitration Proceedings without the "painstaking legal detective work" that MagneTek contends was necessary to uncover the alleged fraud. (Mem. Pet. Vac. 5).

II. Inequitable Conduct

Petitioners argue that while MagneTek has portrayed its claim as a fraud claim, it is actually an inequitable conduct claim. Petitioners argue and MagneTek does not deny that during the Arbitration Proceedings, at the arbitrator's suggestion, the parties entered into an agreement concerning certain aspects of the Arbitration Proceedings. Petitioners agreed not to present any arguments for willful infringement and in exchange MagneTek agreed not to pursue a defense of inequitable conduct in regard to Nilssen's "alleged inequitable conduct before the Patent and Trademark Office." (Ans. Pet. Vac. Ex. B5 Par. 1-3). Petitioners have presented a stipulation that is the memorialization of that agreement. (Ans. Pet. Vac. Ex. B5). We agree with Petitioners that to allow MagneTek to sidestep its agreement during the Arbitration Proceedings and resolve the claims made by MagneTek in this action, would involve an undue interference in the completed Arbitration Proceedings. Such involvement in the merits of the completed Arbitration

Proceedings would be contrary to the limited scope of review for Arbitration Awards.  Thus, MagneTek is also barred from pursuing its petition to vacate based upon the agreement not to assert a defense of inequitable conduct.  We also note, as Petitioners point out, that MagneTek in exchange for its concession regarding the inequitable conduct defense avoided a potential treble liability which could have been a considerable sum.

     MagneTek has pointed out that Nilssen has been sued in other actions that reflect inequitable conduct on the part of Nilssen.  However, the cases cited do not involve a situation that we are presented with relating to a final arbitration award.  In addition, any argument relating to inequitable conduct in any other action is of no relevance in light of the fact that MagneTek bargained away its right to pursue that defense during the Arbitration Proceedings.  MagneTek has not shown that the waiver of such a right was not knowing and voluntary.  MagneTek also contends that public policy favors a vacation of the Arbitration Award in light of Nilssen's inequitable conduct.  However, we conclude that the public policy supporting arbitration as an expeditious and cost-effective alternative to litigation and the public policy supporting the principle that parties should be held to the bargains they enter into are more compelling.

III. Partiality of Arbitrator

MagneTek argues that we should vacate the Arbitration Award because the Arbitrator "exhibited 'evident partiality' or refused to hear evidence pertinent to the controversy." (Mem. Pet. Vac. 10). As indicated above, the bases for "overturning an arbitration award are extremely limited." *Halim*, 516 F.3d at 563 (stating that factual errors or legal errors by the arbitrator "no matter how gross, [are] insufficient to support overturning an arbitration award"). MagneTek offers little more than a cursory argument to support its serious allegation that the Arbitrator was improperly partial to Petitioners. MagneTek points to certain evidence that MagneTek contends the Arbitrator refused to consider. MagneTek also argues in a conclusory fashion that the Arbitrator "advised MagneTek to refrain from making any arguments directed to Nilssen's inequitable . . . conduct." (Mem. Pet. Vac. 10). MagneTek also asserts without providing any support that "the record of the arbitration is replete with interruptions of MagneTek's counsel by the [A]rbitrator seeking acknowledgment of" matters such as "infringement [and] the presumption of validity of patents. . . ." (Mem. Pet. Vac. 10). MagneTek argues that the record shows that the Arbitrator "was guilty of evident partiality and prejudged the matter in favor of Nilssen." (Mem. Pet. Vac. 10). MagneTek has fallen far short of providing sufficient evidence to show improper partiality on the part of the Arbitrator. There is

16

no evidence to show that the Arbitrator exhibited partiality as alleged by MagneTek. MagneTek cannot, as the losing party, subvert the arbitration process by accusing the Arbitrator of partiality in order to escape the effect of the Arbitrator's decision. The record does not support MagneTek's accusations of partiality on the part of the Arbitrator.

IV. GEO as a Party

MagneTek contends that GEO is not a proper party in the instant action since GEO was not a party during the Arbitration Proceedings. However, the Settlement Agreement specifically provided that MagneTek would "pay any arbitration award . . . to Geo Foundation instead of Ole K Nilssen." (Ans. Pet. Vac. Ex. F Par. 12). MagneTek has not provided sufficient justification to exclude Geo from the instant action, considering its interest in the confirmation of the Arbitration Award. Therefore, we deny MagneTek's request to bar GEO from proceeding in the instant action.

V. Confirmation of Arbitration Award

Petitioners move to have this court confirm the Arbitration Award. The record indicates that the parties agreed to arbitration and the Arbitrator properly resolved the

dispute and entered an Arbitration Award for Petitioners. The record does not indicate improper partiality by the Arbitrator and MagneTek has not pointed to sufficient evidence to warrant vacating the Arbitration Award. Therefore, we grant the petition to confirm the Arbitration Award and deny the petition to vacate the Arbitration Award.

## CONCLUSION

Based on the foregoing analysis, we grant the petition to confirm the Arbitration Award and deny the petition to vacate the Arbitration Award.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:  April 16, 2008